ILLINOIS CENTRAL RAILROAD COMPANY v. KATE ARMSTRONG.

[47 South. 427.]

1. RAILROADS. *Highway crossings. Signals. Code 1906, § 4045.*

Code 1906, § 4045, requiring railroads to give signals in approaching highway crossings, is not confined to cases of collisions, but may be invoked in all cases where the failure to give the signal is the proximate cause of injury at the crossing.

2. SAME. *Evidence. Damages. Punitive damages.*

Where a railroad company's locomotive was passed over a highway, inducing the plaintiff and the driver of her team to think it safe to use the crossing, and they undertook to do so just after its passage, but the locomotive, while hidden from view by obstructing cars standing on a side track, was suddenly reversed in its course and run back towards the crossing, without the statutory or other signals being given, so rapidly and so near to plaintiff's horses, that they became frightened and ran away, whereby the plaintiff was injured, the railroad company is liable to her for actual damages, and, in the discretion of the jury, for punitive damages.

FROM the circuit court of Attala county.

HON. J. T. DUNN, Judge.

Mrs. Armstrong, appellee, was plaintiff in the court below; the railroad company, appellant, was defendant there. From a judgment for $1,125 in plaintiff's favor defendant appealed to the supreme court.

Mrs. Armstrong was in a buggy holding a small baby in her lap, and the buggy was being driven by her driver; as they approached the railroad crossing on a public street in the town of Kosciusko, about 9 o'clock in the morning, an engine was engaged in switching a box car. They stopped while the engine with the box car passed the crossing going east, with the bell ringing. It went a short distance only, about fifty yards, passing from plaintiff's view behind some box cars standing on a side track, when it stopped and the engineer reversed the en-

gine and started backwards, without ringing the bell or sounding the whistle, as required by statute. Just after the locomotive passed going east plaintiff's horses were started forward across the railroad track. The engineer, on seeing that plaintiff was attempting to cross the track, stopped his engine on its backward trip, before reaching the crossing; but the team became frightened, turned westward down the track in an opposite direction from the approaching engine, and ran away, throwing the driver from the buggy. Plaintiff held to a rod on the seat and stayed in the buggy, holding her baby in her lap, until the team was stopped. Plaintiff received severe bruises and other injuries, none of which were serious. On the trial the driver testified that on approaching the track he stopped to allow the east-bound engine, with the bell ringing, to pass, and that when the bell stopped ringing, and the engine stopped, he started across the track, not being able to see the engine on account of box cars on an intervening side track; that he had no way of knowing that the engine was approaching from the east until he had gotten on the track, when he saw it approaching without ringing the bell or sounding the whistle; and that the team became frightened at escaping steam from the approaching engine and whirled toward the west and ran down the track.

The court granted plaintiff an instruction authorizing the jury to award punitive damages, and refused defendant an instruction to the effect that the jury could not award such damages.

.The statute, Code 1906, § 4045, is as follows:

"4045 (3547)—*Bell and Whistle, When to Give Alarm, etc.*—Every railroad company shall cause each locomotive engine run by it to be provided with a bell of at least thirty pounds weight, or a steam whistle which can be heard distinctly at a distance of three hundred yards, and shall cause the bell to be rung or the whistle to be blown at the distance of at least three hundred yards from the place where the railroad crosses over any highway or street; and the bell shall be kept ringing, or the

whistle shall be kept blowing, until the engine has stopped or crosses the highway or street."

*Mayes & Longstreet,* for appellant.

As there was no actual collision, the statute which controls the case of persons injured by the running of a train, has no application, and the burden rests upon the plaintiff of showing both the negligence of the defendant, and also the fact that such negligence was the proximate cause of the injury received.

It is to be observed that in fact on its return trip the engine did not cross the street; it did not get on the street. What caused the injury was the misconduct of the team in running away at the bare sight of the engine, with such escape of steam as was usual and ordinary in the operation of an engine.

If the engineer was technically in fault in not ringing the bell as and when he started, still such omission was not the proximate cause of the injury. The engine was under perfect control; it never got to the crossing, for the protection of which the bell is required to be rung. The whole thing was caused by the frightened team running away from the sight of a merely moving engine with the usual escaping steam.

If the team had quietly gone across or gone across even restively, they never would have been touched and nobody would have been injured.

The statute about ringing the bell was not intended to prevent the frightening of teams on roads near to the railroad track or even teams approaching a crossing. It is for the purpose of giving warning that an engine is about to cross over the road at a crossing, so that people may keep off the tracks when the crossing takes place, and collisions may be avoided.

The motion of this engine was so insignificant that even if the engineer did not ring the bell during that slight movement, he was not within the intent of the statute. The language of the statute is striking and peculiar. It indicates that it is intended to cover cases where the engine is indulging in longer move-

ments. It says that the bell shall be rung three hundred yards from the place where the railroad crosses the road and kept ringing. The language of the statute therefore, would seem to import that it really has no application to short switching move-ments that do not extend over three hundred yards.

The court below erred in giving to the plaintiff an instruc-tion allowing the jury to impose punitory damages, and again in refusing to the defendant an instruction to the effect that pun-itory damages were not recoverable.

Even if the railroad company is liable as in the case of negli-gence in not ringing the bell, and that is the only possible ground of liability, it is a mere case of negligence. It is idle to 'talk about this man having frightened this team wilfully. The un-contradicted evidence shows he watched out of the cab, and saw these people crossing and immediately stopped. What he did do was an effective and adequate protection of the crossing against its ordinary uses.

*S. L. Dodd* and *Alexander & Alexander,* for appellee.

It cannot be affirmed that the verdict included punitive dam-ages. It does not so state, and the amount, viz., $1,125 cannot be declared excessive as an award for compensatory damages.

The case was certainly one in which it was proper for the court to leave it to the jury to say whether the conduct of the engineer was reckless or grossly negligent.

It is gross negligence to run an engine, without looking for persons, across a much frequented public street in a city. Either the engineer was reckless and did not keep a lookout, or else he saw plaintiff and her peril. In either view under the evidence there was gross negligence.

But, discussion as to the general duty to keep a look out in crossing a public street near a station is really aside from the case here presented, for the engineer Jenkins, admits that he saw plaintiff with her baby and Oakes, the driver of the team, in the buggy waiting at the crossing as he passed going east. He admits that every time he passes there he sees people standing

at the crossing waiting to pass, and that it is a very common thing to see people whipping their horses up at that crossing. He took notice of the fact that the driver had stopped, and that his horses were restless, and that he was waiting to cross. He went only thirty or forty feet, so he says, east of the crossing and came to a stop and then reversed his engine, causing an escape of steam before he looked back to see whether these people had crossed or not. According to his own statement he knew they had not crossed because his engine was only thirty or forty feet away and there was nothing to prevent his seeing them. We have then a case of an engineer, who, according to his own admission, runs his engine with the bell ringing (everybody admits that it was ringing going east) by a street and sees a gentleman, lady and an infant in a buggy with a restless team, and knowing they had not yet crossed reverses his engine, causing a loud noise, and starts back before even looking out to see if they were trying to cross. As he says: "The flagman gave me the back up signal, and I reversed the engine and at the same time I throwed my head out of the window to look ahead and I saw them trying to cross."

The verdict of the jury has settled the fact that no whistle was sounding or bell ringing when he started backward across the street.

It was a violation of the statute for the engineer to be backing his engine across this street without ringing his bell or blowing his whistle, and he certainly knew that it was a violation of law. The act was therefore not only grossly negligent and reckless, but it was in flagrant violation of the statute. It is for the court then to say whether or not it is proper to leave to the jury the question whether the engineer saw the team and ought to have appreciated the danger, and whether his act was characterized by recklessness.

WHITFIELD, C. J., delivered the opinion of the court.

We do not think the statute in this case, about the ringing of the bell, (Code 1906 § 4045) applies only to cases of actual col-

lisions at crossings. It was intended to apply to all cases of injury at crossings directly traceable to the failure to ring the bell, etc., as the proximate cause of the injury. On the evidence, we think this was a proper case for punitive damages.

The judgment is *affirmed.*